

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable W. R. Chambers, Chairman
Revenue and Taxation Committee
House of Representatives
Forty-ninth Legislature
Austin, Texas

Dear Sir:

Opinion No. O-6457
Re: If the Legislature, by
a four-fifths vote of the
total membership of each
House, passes an appropria-
tion bill, making an appro-
priation from the General
Revenue Fund, and it be-
comes a law, and the General
Revenue Fund reaches the de-
ficit point, would it be
possible for the State
Comptroller of Public Ac-
counts to issue deficit
warrants covering the appro-
priation? And other related
questions.

We have received your opinion request and in view of
our conversation with you, we understand you desire an opinion
on the questions stated below:

1.

"If the Legislature, by a four-fifths vote
of the total membership of each House, passes an
appropriation bill, making an appropriation from
the General Revenue Fund, and it becomes a law, and
the General Revenue Fund reaches the deficit point,
would it be possible for the State Comptroller to
issue warrants covering the appropriation?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

2.

"Should an appropriation bill be passed by a four-fifths majority of each House, would such a vote be evidence than an emergency an an imperative necessity existed?

3.

"Should the appropriation by the Legislature be within the Comptroller's estimate as filed under oath with the Governor, and if it subsequently should develop that for some unforeseen cause the sources of revenue should diminish to the point that it would not meet the appropriation, would the deficit thus created be a legal obligation upon the State?"

The courts have never construed the language in Section 49a of Article 3, as adopted by the voters at the election held in November 1942, and we shall attempt to construe same together with other sections of the Constitution, particularly the following sections:

"Sec. 32, Art. 3. No bill shall have the force of a law, until it has been read on three several days in each House, and free discussion allowed thereon; but in cases of imperative public necessity (which necessity shall be stated in a preamble or in the body of the bill) four-fifths of the House, in which the bill may be pending, may suspend this rule, the yeas and nays being taken on the question of suspension, and entered upon the journals."

"Sec. 39, Art. 3. No law passed by the Legislature, except the general appropriation act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency, which emergency must be expressed in a preamble or in the body of the act, the Legislature shall, by a vote of two-thirds of all the members elected to each House, otherwise direct; said vote to be taken by yeas and nays, and entered upon the journals."

"Sec. 49a, Art. 3. It shall be the duty of the Comptroller of Public Accounts in advance of each Regular Session of the Legislature to prepare and submit to the Governor and to the Legislature upon its convening a statement under oath showing fully the financial condition of the State Treasury at the close of the last fiscal period and an estimate of the probable receipts and disbursements for the then current fiscal year. There shall also be contained in said statement an itemized estimate of the anticipated revenue based on the laws then in effect that will be received by and for the State from all sources showing the fund accounts to be credited during the succeeding biennium and said statement shall contain such other information as may be required by law. Supplemental statements shall be submitted to any Special Session of the Legislature and at such other times as may be necessary to show probable changes.

"From and after January 1, 1945, save in the case of emergency and imperative public necessity and with a four-fifths vote of the total membership of each House, no appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made shall be valid. From and after January 1, 1945, no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds. When the Comptroller finds an appropriation bill exceeds the estimated revenue he shall endorse such finding thereon and return to the House in which same originated. Such information shall be immediately made known to both the House of Representatives and the Senate and the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenue or reducing the appropriation.

"For the purpose of financing the outstanding obligations of the General Revenue Fund of the State and placing its current accounts on a cash basis the Legislature of the State of Texas is hereby authorized to provide for the issuance, sale, and retirement of

Honorable W. R. Chambers, page 4

serial bonds, equal in principal to the total outstand-
ing, valid, and approved obligations owing by said
fund on September 1, 1943, provided such bonds shall
not draw interest in excess of two (2%) per cent per
annum and shall mature within twenty (20) years from
date. Adopted election Nov. 3, 1942."

1.

Your question No. 1 is answered in the affirmative
if in fact an emergency and an imperative public necessity exists.
The language in Section 49a, Article 3 is clear that in cases of
emergency and imperative public necessity the Legislature may,
by a four-fifths vote of the total membership of each House, pass
an appropriation in excess of cash and anticipated revenue.

2.

We are of the opinion that a four-fifths vote would
not be evidence that an emergency and an imperative public neces-
sity existed. Section 32, Article 3 deals with the question of
"imperative public necessity" in suspending the rule requiring
bills to be read on three several days, and this section provides
that this necessity shall be stated in a preamble or in the body
of the bill. Section 39, Article 3 deals with the question of
"emergency" in providing for the time at which a bill shall take
effect, and this section states that an emergency must be ex-
pressed in a preamble or in the body of the Act. It is true
that no such requirement is contained in Section 49a, but we
think, in view of the above mentioned sections of the Con-
stitution, the safe plan would be to state the emergency
and imperative public necessity either in the preamble or
in the body of the bill.

Honorable W. A. Chambers, page 5

### 3.

Your third question is answered in the affirmative. If the Comptroller's estimate shows that the cash and anticipated revenues are sufficient to cover the appropriation and it later develops that the sources of revenue, for some unforeseen cause, are diminished to the point that same would not meet the appropriation, the appropriation would be valid and a legal obligation of the State.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *C. F. Gibson*

C. F. Gibson
Assistant

APPROVED MAR 30, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN